IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TAJI FLEMING,

    Plaintiff,

    v.

LENAGE LAWYER, *et al.*,

    Defendants.

CIVIL NO.: WDQ-10-0438
CIVIL NO.: WDQ-10-0439
CIVIL NO.: WDQ-10-0440

MEMORANDUM OPINION

Taji Fleming sued Dr. Lenage Lawyer, former Warden Brenda Shell, and Correctional Medical Services, Inc. ("CMS") under 42 U.S.C. § 1983 for denial of medical care.[1] For the following reasons, the Shell and CMS motions to dismiss will be granted, and the complaint against Dr. Lawyer will be dismissed without prejudice.

I.     Background[2]

Fleming was an inmate at the Maryland Correctional Institution for Women ("MCIW") in Jessup, Maryland. ECF No. 9 at 1.[3] Shell is the former MCIW Warden. *Id.* At MCIW, medical services are provided by CMS, a private contractor. *See* Parrish Decl. ¶ 1; ECF No. 14 at 3. Dr. Lawyer was an OB/GYN at MCIW. Compl. 1.

---

[1] No hearing is necessary. *See* Local Rule 105.6 (Md. 2010).

[2] For the motions to dismiss, the well-pled allegations in Fleming's complaints are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

[3] Fleming does not appear in the Maryland Department of Public Safety and Correctional Services's Online Inmate Locator. *See* Maryland DOC Inmate Locator, http://www.dpscs.state.md.us/inmate (last visited Feb. 15, 2011). On October 12, 2010, Fleming requested the status of her cases, but the docket sheet sent to her was returned as undeliverable. ECF Nos. 19, 20.

On February 20, 2008, Shell was giving the Assistant Commissioner and other dignitaries a tour of MCIW. ECF No. 9, Ex. A at 2 [hereinafter Notice of Inmate Rule Violation]. During the tour, Fleming approached Shell and asked to speak with her. *Id.* Fleming wanted to discuss her medical issues. *See* WDQ-10-0439, Compl. 7. Shell said it was not a good time, but they would speak later. Notice of Inmate Rule Violation 2. In a "loud and disrespectful tone," Fleming replied, "Yeah, sure you will." *Id.* Shell wrote up Fleming for disrespect and insubordination. *Id.*

On March 17, 2008, MCIW sent Fleming to the University of Maryland Medical Services ("UMMS") emergency room for abdominal pain. ECF No. 9, Ex. A at 12 [hereinafter Admin. Case Summ.]. There, Fleming was diagnosed with pelvic inflammatory disease ("PID"), a hemorrhagic ovarian cyst, and a tubo-ovarian abscess. *Id.*; ECF No. 16 at 1. She was directed to follow-up at MCIW. Admin. Case Summ. 12.

On April 15, 2008, MCIW medical staff discussed the cyst with Fleming, who stated that she had had a cyst before. *Id.* A sonogram was scheduled, and Fleming was given 800 milligrams of Motrin, a brand of ibuprofen. *Id.* Dr. Lawyer continued to prescribe Motrin, "knowing [that] it was exacerbating [Fleming's] internal bleeding." *See* Compl. 4. Dr. Lawyer did not tell Fleming that she had uterine fibroids. *Id.*

On April 23, 2008, Fleming had a sonogram. Admin. Case Summ. 12. MCIW medical staff offered Fleming oral contraceptive pills. *See id.*; ECF No. 16 at 1. In July 2008, staff discussed the possibility of an unspecified surgery. *Id.* On October 15, 2008, they suggested that Fleming may have been suffering from endometriosis, and another sonogram was scheduled. *Id.*

On November 12, 2008, Fleming was sent to Bon Secours hospital for a pelviscopy and cyst excision; however, the surgery was not completed because of Fleming's severe PID. *Id.*

2

After Fleming returned to MCIW, medical staff noted that she might require a total abdominal hysterectomy within four weeks, and an appointment for a second opinion at UMMS was scheduled. *Id.*

On November 20, 2008, Fleming filed with the Warden's office a request for an administrative remedy, stating that MCIW should have followed up on her March 17, 2008 PID diagnosis, given her treatment sooner, and informed her of her uterine fibroids. ECF No. 9, Ex. A at 9–10 [hereinafter Admin. Compl.].

On December 26, 2008, the investigator assigned to the case reviewed Fleming's files and interviewed her. Admin. Case Summ. 11–12. The investigator noted that MCIW had met with Fleming for all scheduled appointments, regularly discussed her medical condition, and given her treatment. *Id.* at 12. Based on this investigation, Shell dismissed the administrative case. Admin. Compl. 9.

On August 19, 2009, Fleming underwent a total abdominal hysterectomy. ECF No. 16 at 1. She is unable to have children, and is at a higher risk for cancer. WDQ-10-0440, Compl. 4. Before the hysterectomy, CMS "ignored [Fleming's] complaints, letters, and efforts for better care from [its] company." *Id.*

On February 23, 2010, Fleming filed *pro se* complaints against Dr. Lawyer, Shell, and CMS under 42 U.S.C. § 1983 for denial of medical care.[4] Dr. Lawyer was never served with the complaint.[5] On May 7, 2010, Shell moved to dismiss or, in the alternative, for summary judgment. ECF No. 9. On May 25, 2010, CMS moved to dismiss. ECF No. 14. On June 11, 2010,

---

[4] Compl.; WDQ-10-0439, Compl.; WDQ-10-0440, Compl.

[5] Thus, Fleming's motion for default judgment against Dr. Lawyer is moot. *See* ECF No. 18. Fleming's motion for enlargement of time to respond to the Shell and CMS motions to dismiss, *see* ECF No. 17, is also moot because she has responded to and opposed those motions, *see* ECF Nos. 15–16.

Fleming opposed those motions. ECF No. 15 (Motion for Relief of Judgment); ECF No. 16 (Correspondence from Fleming).

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001).

Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id*. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)).

"[W]he[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief." *Id*. (citation and internal quotation marks omitted).

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted).

B. Denial of Medical Care Claims

Plaintiffs may bring a civil action to redress constitutional violations under 42 U.S.C. § 1983. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment claim for the denial of medical care, a plaintiff must demonstrate that the defendant's act or omission was a "deliberate indifference to [a] serious medical need." *Id*. at 106. An official acts with deliberate indifference when he actually knows about and ignores "a substantial risk of serious injury to the detainee or [a] detainee's serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 576–77 (4th Cir. 2001) (*citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Medical officials are not liable if they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 843.

To state a § 1983 claim, the plaintiff must allege that the defendant (1) "acted personally in the deprivation of [his] rights," or (2) is culpable under supervisory liability. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994).

5

Supervisory defendants may be held liable under § 1983 if they (1) "failed promptly to provide an inmate with needed medical care," (2) "deliberately interfered with the prison doctors' performance," or (3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). "It is insufficient merely to show deliberate indifference to a serious medical need on the part of the subordinate physicians." *Id.*

The *respondeat superior* doctrine generally does not apply to § 1983 cases. *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990). Thus, private corporations may not be held liable under § 1983 for their employees' actions when liability is based on *respondeat superior*. *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003).

1. The Complaint Against Dr. Lawyer Will Be Dismissed Without Prejudice

Fleming alleges that Dr. Lawyer gave her Motrin "knowing [that] it was exacerbating [her] internal bleeding," and failed to tell her that she had uterine fibroids. Compl. 4. Because Dr. Lawyer was never served, Fleming's complaint against her will be dismissed without prejudice.

2. Shell's Motion to Dismiss or, in the Alternative, for Summary Judgment

Fleming alleges that Shell dismissed without investigating her administrative complaint. WDQ-10-0439, Compl. 3; Admin. Compl. She asserts that Shell should be held vicariously liable for her lack of care. ECF No. 15 at 1. Fleming also complains that she was written up for stopping Shell's tour of the facility to dignitaries. WDQ-10-0439, Compl. 3.

Shell asserts that (1) she did not violate Fleming's constitutional rights, (2) Fleming has not established supervisory liability, and (3) the Warden's office did investigate Fleming's complaint. ECF No. 9 at 6–8.

Fleming has not alleged that Shell personally deprived her of a constitutional right. That

6

Shell wrote up Fleming for stopping the tour to discuss personal issues--which Shell offered to talk about later--does not suggest "unnecessary and wanton infliction of pain" forbidden by the Eighth Amendment. *Estelle*, 429 U.S. at 104.

Nor is Shell culpable under supervisory liability. Fleming has not shown that Shell failed to provide prompt medical care or interfered with recommended medical procedures. *See Miltier*, 896 F.2d at 854. Also, although Fleming has alleged that *Dr. Lawyer* was deliberately indifferent to her medical needs, Fleming has not shown that Shell "tacitly authorized or was indifferent" to Dr. Lawyer's alleged acts. *See id.* Further, deliberate indifference claims against subordinate physicians--here, Dr. Lawyer--do not support supervisory liability. *See id.*

Lastly, the record reveals that Shell's office did investigate Fleming's November 20, 2008 administrative complaint. Admin. Compl. 9. The investigation record (1) notes that Fleming was interviewed on December 26, 2008, and (2) lists the dates and details of Fleming's medical appointments and procedures. Admin. Case Summ. 11–12.

Accordingly, Shell's motion to dismiss must be granted.

3. CMS's Motion to Dismiss

Fleming states that CMS ignored her complaints and efforts for "better care," hired immigrant nurses who are on work visas and unlicensed to practice medicine,[6] and exacerbated her symptoms by delaying proper treatment. WDQ-10-0440, Compl. 4; ECF No. 16 at 3. In moving to dismiss, CMS asserts that it is a corporate entity and thus cannot be held liable under § 1983. ECF No. 14 at 3–4.

CMS is a private corporation that has contracted with MCIW to provide medical services

---

[6] While on temporary work visas, immigrant nurses who are licensed from the country of their nursing education need not have a United States license. *See U.S. Citizenship and Immigration Services*, http://www.uscis.gov/portal/site/uscis (last visited Feb. 15, 2011).

through its employees and agents.  ECF No. 14 at 3.  Although Fleming has asserted that CMS ignored her complaints and delayed treatment, corporations are not liable under § 1983 for their employees' acts when liability is based on *respondeat superior*.[7]  Fleming's Eighth Amendment claim against Dr. Lawyer will be dismissed without prejudice.  *See supra* Part II.B.1.  CMS's motion to dismiss must be granted.

III.    Conclusion

For the reasons stated above, the motions to dismiss of Shell and CMS will be granted, and the complaint against Dr. Lawyer will be dismissed without prejudice.

February 23, 2011                                              /s/
Date                                                       William D. Quarles, Jr.
                                                             United States District Judge

---

[7] *Rodriguez*, 338 F.3d at 355; *see also Romero v. Barnett*, No. DKC-09-2371, 2010 WL 3056628, at *3 n.9 (D. Md. Aug. 2, 2010) (granting CMS's motion to dismiss because *respondeat superior* does not apply to § 1983 actions).